Michael Westfall, U.S. Attorney for Petitioner in this case, Ms. Aura Hernandez. I'd like to begin with an overview of the arguments that I will be presenting and there are four. The first argument is that the Board of Immigration Appeals abused its discretion when it denied equitable tolling as to Ms. Hernandez's August 2018 motion to reopen. Second, that the Board abused its discretion by denying equitable tolling as to the November 2017 motion to reopen. Third, that the Board erred in denying Ms. Hernandez's ineffective assistance of And fourth, I'd like to address the question that the court raised prior to today with respect to the potential application of numerical bars on motions to reopen. Beginning with Ms. Hernandez's August 2018 motion to reopen. I don't want to dwell on the factual details, but I do think it's worth acknowledging up front the premise of the Board's decision in that case. And the Board premised its decision on three things. First, the Board accepted that Ms. Hernandez was the victim of a sexual assault while she was in the custody of the United States government. Second, the Board accepted that that sexual assault caused Ms. Hernandez to suffer trauma and PTSD. And third, the Board accepted that that trauma and PTSD led to exceptional Previously, the Board had accepted and found that the record in this case was consistent with respect to Ms. Hernandez's claim of sexual assault, trauma, and PTSD. And there's ample record evidence to support that. And I would just note for purposes of today's argument, Dr. Harold Abelard's psychiatric assessment report, where he found in 2013 that Ms. Hernandez was, at the time she received the notice to appear, she was incapable of grasping the meaning of what she was being told to do and what she was instructed to do on that notice to appear. And it's against that context that the Board of Immigration Appeals denied equitable tolling. And the basis of that was singular. The Board denied equitable tolling because it found that Ms. Hernandez had not demonstrated that she exercised reasonable diligence prior to 2013, which is when she found out about the removal order against her. The question for this court is, why is that an abuse of discretion? And I would begin by pointing this court to its prior decision in the Liu Zhu Fang versus Attorney General Holder decision from 2012. And in the Fang decision, this court said that the Board of Appeals is obligated to give meaningful consideration to a petitioner's evidence in support of his claim, his or her claim. Counselor, could I just clarify something for me, please? In your second motion, you saw so-and-so re-owing and statutory relief. In your second motion, is it statutory or so-and-so? It's both, Your Honor. And I would say that certainly the Board of Immigration Appeals recognized that we sought statutory relief. In this decision, the Board analyzed the so-and-so claim as well as the statutory claim. And all we're focused on for purposes of today's argument is the Board's finding as to the statutory claim for exceptional circumstances and equitable tolls. Now, in Fang, this court found an abuse of discretion for the Board to not only not give meaningful consideration, but not even to mention and discuss the strongest evidence in support of that petitioner's claim for asylum. And in that case, the Board completely overlooked a document which demonstrated that the petitioner was scheduled to undergo forced sterilization by the Chinese government, which was the basis of her asylum decision, and the Board made no mention of that evidence. Here, we have the same error. The Board of Immigration Appeals acknowledged the trauma and PTSD for purposes of the exceptional circumstances, and the Board accepted that trauma and accepted that PTSD. But when it came to the reasonable diligence problem of equitable tolling, the Board made no mention of, had no discussion with respect to that same evidence, which we would submit as the strongest evidence in support of Ms. Hernandez's claim. Now, this is critical in this case because Ms. Hernandez's 180-day period for moving to reopen is not triggered by a notice to appear. It's not triggered by an immigration hearing before an immigration judge. Her time period to move to reopen is triggered by a final removal order. And where the Board overlooked the trauma and PTSD, it overlooked the fact that Ms. Hernandez had no knowledge of that final removal order, and that is through no fault of her own. That is through the sexual assault and the trauma and the PTSD that the Board accepted for purposes of exceptional circumstances and then made no mention of, took no account of in its reasonable diligence analysis. And we would submit that that is a piece of discretion under this Court's decision in Liu-Ju Fang. I'd like to turn now to our second argument, which is with respect to the first motion to reopen filed in November 2017. And I'd like to start with the Board's equitable tolling analysis in that case. The Board denied Ms. Hernandez's equitable tolling for two reasons. And the first reason, and this was a point that the government, the respondent, excuse me, talks about in its opposition brief, is that the Board found that Ms. Hernandez failed to explain what the Board considered to be inconsistencies between the documents submitted to the immigration judge in 2013 and then the documents submitted to the Board in 2017. And the critical distinction I would like to draw for your honors this morning is that it was not the inconsistencies themselves that caused the Board to deny equitable tolling. It was Ms. Hernandez's failure to explain those inconsistencies. And again, the question is why is that abuse of discretion? And for this, I would point the Court to its prior decision in 2006 in the cases Cabamba versus Attorney General Gonzalez and Judge Higginbottom, you were actually on the panel for that case. And in Cabamba, this Court said that it does not, despite the abuse of discretion standard, this Court does not accept adverse credibility determinations blindly. And it requires the Board to provide specific and cogent explanation for coming to an adverse credibility determination with substantial evidence to support that determination. And in that case, the immigration judge had denied an asylum petition solely on what it considered to be inconsistencies between the petitioner's oral testimony and the documentary record submitted in support of her asylum case. This Court reversed. And this Court reversed in part because it found that the petitioner in that case was, at her asylum hearing, given the opportunity to be confronted with the inconsistencies. And she addressed the inconsistencies. And in this Court's opinion, addressed those inconsistencies credibly, such that this Court found that the finding based solely on the inconsistencies was an abuse of discretion. And I raise Cabamba for this reason. In Ms. Hernandez's motion to reopen, she was never provided the opportunity to explain those inconsistencies. The respondent in its opposition brief to Ms. Hernandez's motion never suggested, argued, or intimated that there were any inconsistencies between the two submissions. And the Board of Immigration Appeals never held a hearing that would have, again, allowed the Board to confront Ms. Hernandez with these perceived inconsistencies and allow her to explain them credibly or not. She was never given that opportunity. And for Ms. Hernandez to be held to account for failing to explain herself when she never had the opportunity to do so, we submit, would be an abuse of discretion by the Board. The Board also denied equitable tolling with respect to the November 2017 motion because it found no evidence that, in its mind, Ms. Hernandez had pursued a case against the Border Patrol agent who committed the assault against her or that she pursued a U-Visa. Now, we submit this is an abuse of discretion for two reasons. First, that the Board's finding was contrary to the evidence. And there is evidence in the record, and in particular at page 234, which showed that Ms. Hernandez participated in several meetings and interviews with the Department of Homeland Services in its investigation of the allegations that she made. She submitted written affidavits. She looked at photographs for identification purposes, and she agreed to make herself available for a polygraph examination. So for the Board to suggest that Ms. Hernandez showed no evidence that she pursued a case against the agent or that she pursued a U-Visa is, again, contrary to this evidence. But even stepping back from that, the Board's analysis is contrary to the law. And in our papers, we cite the Southern District of Texas' decision in Perez v. Stevens. And that case stands for the proposition that when reviewing reasonable diligence for equitable tolling purposes, a court, and in this case the Board, should be narrowly focused on the deadline that the petitioner seeks to toll, not the myriad of other possible legal reliefs and avenues for relief that he or she could pursue. In Perez, it was a federal habeas petition, and the petitioner told the court that he had pursued all of these other different things throughout the period of time at issue. And the court said, well, what's relevant is what you do to pursue the relief at issue here, which is federal habeas relief, not all of the other of relief. And so for the Board of Immigration Appeals to have denied equitable tolling because Ms. Hernandez didn't pursue a criminal case, or because she didn't pursue a U-Visa, or she didn't pursue a business claim, or whatever, all of these other forms of relief is simply not relevant to the question as to whether she pursued diligently a motion to reopen, which she did, and there's no suggestion that she didn't, upon learning about it in 2013. Turning to Ms. Hernandez's ineffective assistance of counsel plan, the Board of Immigration Appeals first wrote that on the record in front of it, it found Ms. Hernandez's former counsel's decision to pursue a U-Visa to be a reasonable decision by an attorney such that his performance was not constitutionally deficient. And the reason that that's an abuse of discretion is because one page later, in its opinion, one page later, the Board found and denied equitable tolling because it found that Ms. Hernandez submitted no evidence that she had pursued a U-Visa. And so these two findings, these two conclusions are irreconcilable. They cannot both be true. It cannot be the case that Ms. Hernandez's counsel was adequate in his performance because the Board found that he pursued a U-Visa, and that Ms. Hernandez can be denied equitable tolling because the Board found no evidence that she had done so. The Board also denied ineffective assistance of counsel because it found that the attorney was reasonable in concluding that Ms. Hernandez had pursued an asylum based on a single document that was in front of the attorney, and that was Ms. Hernandez's counselor's report that was submitted to the Immigration Court in 2013. And the Court found that based on this document, and this document alone, the attorney was reasonable in concluding that there was no asylum relief to pursue. And we would submit that that was an abuse of discretion based on these circumstances. This was an attorney who was a trust in the state's prior immigration experience. Most notably, he did not bring in a co-counsel with immigration experience. He spoke not a word of Spanish. Ms. Hernandez does not speak a word of English. And he did not, as Ms. Hernandez states in her affidavit, consistently use a translator when communicating with her. And so for the Board to base its opinion on a single document when the evidentiary record showed that literally former counsel was not able to communicate with his client, we consider to be an abuse of discretion because it ignores the broader circumstances. And that is an attorney's obligation, in particular in immigration cases, to communicate with, to guide, and to counsel their clients. In my last about two minutes, just under two minutes, I'd like to address the Court's question as to the application of numerical bars. And I would point the Court to our letter of April 15th. The first point in that letter was that the statutory provision and the regulatory provision in the Court's letter of April 13th are limited to the application of proceedings before an immigration judge and do not apply to proceedings before the Board of Immigration Appeals. And that's by their plain terms, as well as this Court's prior decision in the Lavery case, which we cite in our opinion, in our letter, excuse me. Now, there is a separate regulatory provision, 1003.2c2, which contains a numerical bar to motions for proceedings before the Board of Appeals. But according to the analysis of the Board in this case, Ms. Hernandez's motion, at least in August of 2018, was exempt from that numerical bar. Now, this Court could find that the Board's analysis in that respect was incorrect, and that perhaps the motion to reopen should have been subject to numerical bars. And for that proposition, I would re-cite to the Second Circuit's decision in Reyes v. Holder, where the Second Circuit said, even though the motion should have been barred numerically, where the Board decides the case on its merits, a circuit court has jurisdiction to hear and decide a case on its merits. And I would also cite to this Court its prior decision from 2010, which is the Lopez-Dubon v. Attorney General I believe. And in that case, the Court came to the same conclusion with respect to what it considered a jurisdictional bar of the exhaustion remedy. And even though the petitioner in that case had not complied with that jurisdictional bar, the Court allowed the case to be decided on its merits because the Board had done so. Your Honors, I will take the rest of my time to a rebuttal. Thank you, Your Honor. May it please the Court, Jennifer Dickey, Attorney General. The Board correctly denied Petitioner's second and third motions to reopen her in absentia order of removal. As opposing counsel noted, to reopen that order, Petitioner would have needed first to show an exceptional circumstance preventing her attendance at her removal hearing, and second, an entitlement to equitable tolling of the 180-day deadline. Even assuming that trauma from her alleged assault at the border prevented her attendance at her removal hearing, Petitioner has not established an entitlement to equitable tolling. Petitioner first tried and failed to reopen her in absentia after it was entered, and as the Board explained in its denial of her second motion to reopen, Petitioner neither argued for equitable tolling nor established ineffective assistance of counsel. Furthermore, as the Board explained in its denial of her third motion, Petitioner has failed to establish that she was diligently pursuing her rights during the seven-year period between order of removal and her first motion to reopen. Just to clarify as an initial matter what is before this court, Petitioner's challenges for statutory motions to reopen are before this court, but to the extent Petitioner is challenging the denial of her motions for sua sponte reopening, those denials would not be before this court, because as this court has recognized, it lacks jurisdiction to consider that. There is no legal standard by which to judge the exercise of discretion by the Board to deny those motions. Turning then to the statutory motions to reopen, I think I'll begin where opposing counsel left off, which is with the ineffective assistance of counsel. The Board noted, and this is subject to the highly deferential abuse of discretion standard of course, that Petitioner's therapist report stated that two former partners in Guatemala had quote-unquote abandoned her. The therapist's report discussed numerous traumas in Petitioner's life, but did not include any allegations that either man physically abused her or threatened her, or that she was in any way unable to leave her relationship, which was the basis of the Board's decision in matter of ARCG defining a particular social group of married women who are unable to leave their relationship. The Supreme Court has recognized going back to Strickland v. Washington itself, that an attorney's duty to investigate is partially determined by the circumstances of the case and information supplied by the defendant. Here, Petitioner did not supply any information to her attorney that would give rise to a duty to investigate whether she was a victim of domestic violence in a marriage. To the contrary, she affirmatively said that her partners abandoned her. Under those circumstances, the attorney had no to believe that matter of ARCG would have been at all relevant or that Petitioner would have been entitled to seek asylum there under. Of course, we also know that now matter of ARCG has been overruled by the Attorney General. The Board also did not abuse its discretion in denying equitable polling in this motion. Petitioner points to three things, I guess, in response to that finding. Petitioner says that the Board failed to give her a chance to explain the inconsistencies in her accounts of what occurred in Guatemala. I would simply note that the inconsistencies in those accounts are plain on the face of the document that she submitted. Petitioner was given an opportunity to move for reopening and put in those papers. In fact, she tried to explain those inconsistencies by saying that it had taken a long time to tell her story. But the fact of the matter remains that in her therapist report in 2013, it did not include any allegations of domestic violence. Second, with respect to Petitioner's failure to diligently pursue her rights, the Board noted two examples of her lack of diligence, her failure to file a U-Visa application. These are relevant in particular because the second motion to reopen was filed in 2017, two and a half years after the Board's decision on her first motion to reopen, when the Board told her if she was interested in a U-Visa application, if she thought she would qualify, she should file a U-Visa application. Two and a half years passed between the Board's decision, which she did not seek review of in its course, and her subsequent motion to reopen. And during that time, she apparently did not pursue a U-Visa application. That is relevant in certain cases before the Board, because even though the Board itself lacks jurisdiction to issue a U-Visa, certainly if Petitioner had pursued a U-Visa and obtained one, the Board would not then be able to order her removal. She would have non-immigrant status and be entitled to stay in this country under that U-Visa. So it is relevant to the Board's assessment of her diligence. Turning then to the third motion to reopen, where she more fulsomely argued for equitable tolling. There, it's interesting that she, the Board concluded that she had not adequately explained what she did between the time of her removal order and the time of her first motion to reopen. So in between the January 2006 removal order, and then we can fast forward six months, you know, include the entire 180-day statutory time frame. That brings us to about July of 2006. Between then and her first motion to reopen, which was filed in 2017, I believe it was June of 2017. That's a seven-year period, and Petitioner did not explain anything in the record about what she was doing at that time. The record says that she went to New York. Her sister helped get her set up in this country. She began working in housekeeping, but she did not describe anything more particular about her to pursue her rights during this time. And it's interesting, although there is evidence in the record that she was later diagnosed with PTSD, that evidence does not explain how that diagnosis would have affected her ability to pursue her rights during that time. Instead, if anything, the evidence in the record suggests that she should have been able to pursue her rights. Her therapist said in June 2013, quote, Aura explained to me that while she had never forgotten the event, she was able to put it behind her until a Sunday several months ago in November, end quote. That's when she was stopped by police in a traffic stop and came to the knowledge of police about her final order of removal. Her declaration said she was in a daze, quote, for months, end quote, afterwards. And the psychiatric assessment said, quote, she reports long history of anxiety due to past trauma that have been dormant, but recent events have revived her symptoms, end quote. And we know from the record that she was able to hire a lawyer in 2013 after she came to the attention of the police. So and she petitioner does not explain why she was at that point able to overcome her diagnosis of PTSD in order to that mental illness is itself a basis for equitable tolling. In the Hood versus Pierce Roebuck case, this court made clear that to the extent that mental illness is a basis for equitable tolling, it has to be mental illness that affects one's ability to pursue one's rights. And the Tenth Circuit has noted that PTSD covers a broad spectrum of more specific conditions. And within those specific conditions, there are degrees of severity, functionality, and duration, all of which also includes treatment, medications and much more. That's from the O'Brien versus Oklahoma case, 568 Federal Appendix 632, and site 636. And I think it's relevant to point out here, all we have the diagnosis of PTSD, but without any of the additional information that would be affected the ability to pursue her rights. Petitioner bore the burden to establish equitable tolling, and the board under these circumstances certainly did not abuse its discretion in concluding that she had not met this burden. The opposing counsel points to petitioner's psychiatric assessment that the board did not specifically mention, but the board did mention her trauma. And that is sufficient to indicate that the board considers the trauma presented. And as I noted, the psychiatric assessment is not actually as helpful as petitioner would claim because it does suggest that petitioner's trauma had been at least the history of anxiety associated with the trauma had been dormant and was only recently revived. And that psychiatric assessment also focuses on a number of other factors that may be influencing petitioner's anxiety about returning to Guatemala, but does not establish that petitioner was unable to pursue her rights. So, for all of those reasons, the board's third motions were plainly not an abuse of discretion. Finally, I would just note that although we agree that the petitioner's motions were both numerically barred under the statute and regulation, we have not expressed that argument in this court because we understand this court should traditionally follow the Chenery Doctrine and apply it to Board of Immigration Appeals only on the basis of its stated rationale. Here, the Board of Immigration Appeals, on the numerical bar, I would also point out that although it is true that the numerical bar in 1003.23B42 relates to orders of removal to motions to reopen in front of the immigration judge, CFR 1003.23C3, which is the provision that authorizes such motions to be brought in front of the board, cross-references the provision relating to the immigration judge. So, one would presume that the numerical limitation included in the same paragraph that is cross-referenced also applies. Ms. Dickey, good morning. If I could skip back to equitable tolling for a second. For equitable tolling, what would due diligence have looked like in this case? For example, did Hernandez need to report the assault to law enforcement? Describe for me what due diligence would have looked like. I don't believe that Ms. Hernandez would have needed to report the alleged assault to police to necessarily establish due diligence. That is simply one example that the board pointed to. Rather, due diligence, I think, would have required a petitioner to, for example, follow up on the notice to appear that she plainly and has conceded she had in her possession, which, for example, told her to keep the immigration court apprised of her address. She could have contacted, even if she missed the original hearing, she could have contacted the immigration court and provided her proper address. She would then have received notice of the inabstantial order of removal that was entered against her. She could, at that point, have hired an attorney and filed a motion to reopen much sooner than the seven years later in which she acted. And here, I think, actually, this court's decision in Mauricio Benitez versus Sessions is helpful. There, Mauricio Benitez found out about his inabstantial order of removal through a FOIA request, and he said, oh, I did not need to pursue that motion until I knew of my inabstantial order of removal. In this court, Mauricio Benitez, despite having been personally served with an NTA informing him that he would receive a notice during date and time, made no effort to correct his NTA, update his mailing address with the court when he moved six months after receiving the NTA, or otherwise follow up on his immigration status for 13 years. He cannot now complain that the BIA failed to grant him release at the 13th hour. And here, I think it's also important to recognize although petitioner's English may have been limited, the record suggests that she had some English, not that she didn't speak any English. And in any event, this court has held that due process allows notice of the hearing to be given solely in English to a non-English speaker, if the notice would put a reasonable recipient on notice that further inquiry is required. That's Olleda Calderon v. Holder from 2013. And that decision actually cited an older Spanish speaker. I thought the record reflected that she was given an oral instruction in Spanish about the notice to appear. She was. I was simply noting that even if she was unable to focus on the oral instruction in Spanish at the time, she also had the notice to appear in her possession. So, even accepting that she was in a daze and could not fully appreciate it, which we do not concede that that occurred, but it's simply not necessary to resolve this case because it is clear that she had the notice to appear, which met all of the statutory standards, including it included the specific hearing date on which her in absentia order of removal was held, which as this court is aware is not actually, it's not always a common circumstance, but the notice to appear included the accurate hearing date. The hearing went forward. She had that notice to appear in her possession that informed her of her obligation to keep the immigration court apprised of her whereabouts, and she failed to do so. She, in fact, took no action until she was stopped by police in November 2012 and came to the attention of police as to her whereabouts. The government is sympathetic to petitioner circumstances, just as the Board of Immigration Appeals was. We certainly do not condone any conduct of the sort petitioner alleges at the border, and I think it's valuable to note that the government, upon hearing of this allegation in her first order to reopen, undertook its own investigation to respond to it because the government takes these allegations so seriously, but the fact remains that petitioner bears the equitable tolling, and she has not done so here in either the second or the third motion. It has now been almost 15 years since petitioner entered this country unlawfully, and these motions were probably denied by the Board of Immigration Appeals. So for those reasons, I would respectfully ask this court to deny the petitions, and if the court has no further questions, I'm happy to yield my time to this court. Thank you, Your Honor. A couple of points I would like to make in rebuttal. I think, first of all, Ms. Stigney, at the beginning of her argument, made reference to, I believe, Ms. Hernandez's failure to pursue a U visa, and I think she put the date on that at 2017, around the time of the November motion to reopen. The record, and again, this is the record at 2-34, shows that the U visa pursuit began in 2013 by her former counsel, and that was triggered by Ms. Hernandez learning about the final removal order against her for the first time, and I think this leads into the points that counsel for respondent was addressing with respect to reasonable diligence, and I think that, you know, a citation to the Mauricio Benitez case, or really any other case that has been before this court, I think ignores the really critical circumstances that, again, the Board of Immigration Appeals accepted, and I think it's easy when we're talking about what Ms. Hernandez could have done, or should have done, to ignore that the Board of the United States government. She underwent and was the victim of a sexual assault, and that sexual assault, and I would say it's not an allegation here, again, this is a fact that was accepted by the Board, and the Board accepted that that sexual assault led to PTSD that rendered Ms. Hernandez unable to understand what was required of her, and that is the critical fact that leads to the six-year time period between the final removal order and when Ms. Hernandez begins to pursue her case, and that gap, while admittedly is a long period of time, is singularly attributable to the fact that she did not know about the removal order against her, and it's the removal order against her that triggers her obligation to proceed. And from the moment Ms. Hernandez, for the first time, learned that she was subject to a removal order, she took action. She hired an attorney whose performance we do believe was deficient for the reasons I discussed in my opening, but she hired an attorney, she immediately moved to reopen, and since that moment she has been pursuing her right diligently, and I haven't heard from respondents or from the Board that there is any suggestion that she didn't from the moment she learned of the removal order against her. And I think, Your Honors, the last thing I would just note is, prior to appearing today, I had asked my client if she had anything she wished to say to the Court, and with the Court's permission, I just have a brief statement that I wanted to present to the Court, and Ms. Hernandez asked this Court, she said, I ask you for humanity. She said, please consider the petition in my case because I have three American children, I have a family to fight for, and children to educate so that they can grow up to become good men with strong morals and strong principles. And I will leave the Court with those words from Ms. Hernandez, and again, just a reminder that Ms. Hernandez was placed into this position through no fault of her own, and it can't be suggested otherwise. And again, without dwelling on those details, it is the moment she learned that the removal order existed, it is the moment she took action, and she has done so more than diligently. I would like to thank you, Your Honors, for your time in hearing our case today. Thank you, counsel. We appreciate it. Thank you, Your Honor. Thank you, counsel. Thank you.